Argued and submitted March 7, decision of the Court of Appeals and order of the
Workers' Compensation Board affirmed June 2, 1994

In the Matter of the Compensation of
Everett L. Weems, Claimant.

Everett L. WEEMS
and Metropolitan Disposal Corporation,
an Oregon corporation,
and EE Equipment, Inc.,
an Oregon corporation,
*Petitioners on Review,*

*v.*

AMERICAN INTERNATIONAL ADJUSTMENT
COMPANY,
and AIG Risk Management, Inc.,
*Respondents on Review.*

(WCB TP-91026; CA A75753; SC S40726)

874 P2d 72

Stephen R. Frank, of Tooze Shenker Duden Creamer Frank & Hutchison, Portland, argued the cause for petitioners on review. With him on the petitions were Arden E. Shenker and Michael J. Gentry.

Jerald P. Keene, of Roberts, Reinisch, MacKenzie, Healey & Wilson, P.C., Portland, argued the cause for respondents on review.

GILLETTE, J.

Durham, J., filed a concurring opinion and in which Unis, J., joined.

## GILLETTE, J.

In this workers' compensation case, petitioners asked the Workers' Compensation Board to approve, pursuant to ORS 656.587 (discussed *post*), a proposed settlement of a third-party action to which a paying agency had refused to give its approval. The Board disapproved the settlement. On judicial review, the Court of Appeals affirmed the Board's decision. *Weems v. American International Adjustment Co.*, 123 Or App 83, 858 P2d 914 (1993). We allowed review and now affirm the decision of the Court of Appeals.

Claimant sustained a compensable injury to his left leg while operating an industrial-sized garbage compactor on his employer's loading dock. Two clamping bolts came loose from the compactor while claimant was working with it. The compactor moved, crushing claimant's left leg; the leg had to be amputated at mid-thigh.

In addition to claiming and receiving compensation under the Workers' Compensation Law, ORS chapter 656, claimant commenced a negligence action against Metropolitan Disposal Corporation, the owner of the compactor, and EE Equipment, Inc., a company that serviced the compactor (collectively referred to as MDC).[1] Claimant's wife joined in the action, seeking damages for loss of consortium. Claimant asserted in his complaint that MDC knew or should have known that the bolt-clamping mechanism was inadequate or failing. MDC denied any negligence and asserted in response that claimant's injury was due to his own negligence.

Following settlement negotiations conducted before a circuit court judge, claimant and MDC agreed to settle his negligence claim for $250,000. At the same time, claimant's wife and MDC agreed to settle her loss of consortium claim for $330,000. The settlement then was tendered to the paying agencies for their approval. A "paying agency," in this context, is a self-insured employer or workers' compensation insurer paying benefits to the worker or beneficiaries with a

---

[1] Claimant also asserted a claim for products liability; that claim, however, was dismissed on statute of limitations grounds. That claim is not an issue in the present proceeding.

third-party right of action. ORS 656.576.[2] In this case, the paying agencies were American International Adjustment Co. and AIG Risk Management (collectively referred to as AIAC). AIAC asserted its right, under ORS 656.587, to disapprove the settlement of claimant's negligence claim. That statute provides:

> "Any compromise by the worker or other beneficiaries or the legal representative of the deceased worker of any right of action against an employer or third party is void unless made with the written approval of the paying agency or, in the event of a dispute between the parties, by order of the board."

ORS 656.580 provides that the paying agency has a lien against a claimant's third-party claim. Under that statute, the paying agency's lien "shall be preferred to all claims except the cost of recovering such damages." ORS 656.580(2). ORS 656.593 sets out the procedure for distributing the proceeds of any damages recovered in a third-party action. In the event that the claimant settles the action, "the paying agency is authorized to accept such a share of the proceeds as may be just and proper." ORS 656.593(3).

In the face of AIAC's disapproval of the proposed settlement, claimant and MDC asked the Workers' Compensation Board to approve the settlement under ORS 656.587 which, as noted, permits the Board to approve a claimant's settlement of a third-party action when the paying agency refuses to do so. In support of their petition to the Board, claimant and MDC submitted affidavits from MDC's counsel and from the circuit court judge who presided over the settlement negotiations. Both MDC's counsel and the judge opined that the proposed settlement was "reasonable." AIAC submitted opposing affidavits that opined that the proposed settlement was "so grotesquely out of proportion as to be far outside the maximum possible range of reasonableness." AIAC argued that the proposed settlement was, in fact, an attempt to allocate an excessive share of the settlement money to the wife's loss of consortium

---

[2] For a general discussion of the third-party action provisions of the workers' compensation law, see *Toole v. EBI Companies*, 314 Or 102, 105-07, 838 P2d 60 (1992).

claim, thereby circumventing AIAC's lien on claimant's negligence claim. That lien totaled more than $200,000.

The Board disapproved the proposed settlement of $250,000 between claimant and MDC, concluding that the settlement appeared to be "grossly unreasonable." Claimant and MDC sought judicial review in the Court of Appeals, arguing that the Board's decision to disapprove the settlement was not supported by substantial evidence. Claimant and MDC also argued that the Board should have been bound by the settlement conference judge's opinion of the reasonableness of the settlement in the absence of "clear and convincing evidence" to the contrary. The Court of Appeals rejected the arguments of claimant and MDC and affirmed the decision of the Board.

■ The first issue on review that we consider is the role of a settlement judge's opinion of reasonableness in the Board's process of approving a settlement under ORS 656.587. As noted earlier, that statute provides:

> "Any compromise by the worker or other beneficiaries or the legal representative of the deceased worker of any right of action against an employer or third party is void unless made with the written approval of the paying agency or, in the event of a dispute between the parties, by order of the board."

By its terms, ORS 656.587 grants to *the Board*, not to a settlement judge, the authority to approve a claimant's compromise of a third-party action when the paying agency refuses to give its approval.[3] The settlement judge has no authority to approve or disapprove a claimant's compromise of a third-party action. Under ORS 656.587, any such compromise is "void" unless approved by the paying agency or the Board.[4]

---

[3] In contrast, the statutes in some jurisdictions, including Arkansas, Nebraska, and New York, provide for *court* approval of settlements in such cases. 2A Larson, *The Law of Workmen's Compensation* 14-448, § 74.17(d) (1993).

[4] A judge's role in settlement negotiations between the parties to a civil case has its basis in the Uniform Trial Court Rules. UTCR 6.010(1)(g) provides that, "[i]n any civil proceeding the court may, in its discretion, direct the parties to appear before the court for a conference to consider: * * * the possible settlement of the case." UTCR 6.200 further authorizes each judicial district to adopt a supplementary local rule "providing for a uniform pretrial settlement conference procedure for use in all

Notwithstanding that unequivocal statutory grant of approval authority to the Board, claimant and MDC contend that this court should require the Board, as a matter of law, to defer to the opinion of the settlement judge regarding the reasonableness of a settlement, unless there is "clear and convincing evidence" to the contrary. For the reasons that follow, we decline to impose on the Board the rule of deference proposed by claimant and MDC.

Claimant and MDC argue that deference by the Board to the opinion of the settlement judge is necessary to further the important public policy in favor of settlements. This court strongly encourages settlement of all kinds of legal disputes. However, in determining the proper scope of the Board's approval authority under ORS 656.587, we must look to the policy that inheres in the statutory grant of authority itself — *i.e.,* the policy that the legislature sought to advance in granting approval authority to the Board — rather than to any policies that may be advanced under the Uniform Trial Court Rules in institutionalizing the role of a settlement judge.

As the body generally charged with matters relating to the adjudication of claims under the Workers' Compensation Law, the Board plays a key role in the workers' compensation system. *SAIF v. Wright,* 312 Or 132, 137-38, 817 P2d 1317 (1991); *see also* ORS 656.726(2) (describing powers and duties of the Board). In that role, the Board is responsible for resolving many of the disputes that arise between claimants and paying agencies, whether insurers or self-insuring employers. The legislature's choice to grant to the Board approval authority over the settlement of third-party actions reflects the important role that the Board plays in the workers' compensation system as an arbiter of disputes between participants in the system. It necessarily follows that, in exercising its approval authority under ORS 656.587, the Board's responsibility is to consider the interests of

circuit court civil cases." Nothing in the Uniform Trial Court Rules contemplates the "approval" of a settlement by the settlement judge.

In this case, the circuit court judge who presided over settlement negotiations did not purport to "approve" the proposed settlement of claimant's third-party action. Rather, the judge provided an affidavit in support of claimant and MDC's petition to the Board seeking the Board's approval of the proposed settlement. In that affidavit, the judge stated her opinion that the settlement was "reasonable."

claimants and paying agencies *as participants in the workers' compensation system.*

■ A circuit court judge involved in settlement negotiations between the parties to a civil action has a different role. There, the judge's role is to assist the parties as they evaluate the strengths and weaknesses of their respective cases and to attempt to facilitate a resolution acceptable to the parties. *See, e.g.,* LaMar, *Pre-Trial Settlement Conferences in Multnomah County,* 27 Willamette LJ 549, 553 (1991) (discussing the role of settlement judges). There is no statutory basis for requiring the Board to defer to an assessment of a proposed settlement made by a settlement judge in a case in which workers' compensation is involved. To require such deference, we would have to add words to ORS 656.587 that the legislature did not include when it committed approval authority to the Board. Consequently, we decline to adopt the rule of deference proposed by claimant and MDC. The Board is under no statutory obligation to give deferential consideration to an opinion expressed by a settlement judge regarding the reasonableness of a proposed settlement of a third-party action.

Having rejected the rule of Board deference to the settlement judge proposed by claimant and MDC, we are left with the argument that the Board's decision to disapprove the proposed settlement was not supported by substantial evidence. *See* ORS 183.482(8)(c) (stating standard). As to this issue, claimant and MDC have not raised any question of legal error in the Board's application of its standard for approving settlements in third-party actions.[5] Rather, they argue

---

[5] As to the standard applied to the approval of a third-party settlement under ORS 656.587, the Board's order in this case states as follows:

"Pursuant to ORS 656.587, the Board is authorized to resolve disputes concerning the approval of any compromise of a third party action. In exercising this authority, we employ our independent judgment to determine whether the compromise is *reasonable.* * * *

"* * * Generally, we will approve settlements negotiated between a claimant/plaintiff and a third party defendant, unless the settlement appears to be *grossly unreasonable.*"

(Emphasis supplied.)

A question regarding the consistency of those two statements of law arose during oral argument before this court. At no time before that, however, did claimant and MDC contend that the Board had failed to announce and apply a clear legal standard of approval to this case. Accordingly, claimant and MDC have not preserved for this

merely that the record lacks substantial evidence to support the Board's decision to disapprove the settlement under that standard. The Court of Appeals already has addressed that question, *Weems v. American International Adjustment Co., supra*, 123 Or App at 88, and we conclude that it would benefit neither bench nor bar for this court to revisit that substantial evidence issue in this case.

The decision of the Court of Appeals is affirmed. The order of the Workers' Compensation Board is affirmed.

**DURHAM, J.,** concurring.

I concur with the majority's holding that the Board is not obligated to defer, or accord particular evidentiary weight, to the opinion of a settlement judge about the reasonableness of a settlement that the Board reviews under ORS 656.587. I find no statutory basis for such an obligation, and we cannot impose one on the basis of our own policy predilections.

In addition, I also concur in the rejection of claimant's substantial evidence argument. The amount of the consortium claim settlement, and the testimony of a lawyer regarding the relationship of a consortium claim's value to the value of the injured party's claim, support a rational finding that claimant's settlement was "grossly unreasonable."

Although I agree with the court's answer to the narrow questions that the petition for review presents, I write separately to explain more completely the basis for my concurrence. On the record and briefs before us, the court correctly avoids discussing the Board's failure to interpret ORS 656.587, to define its "grossly unreasonable" standard, and to explain rationally how its findings support its conclusion that claimant's settlement was grossly unreasonable. In the absence of some definition or explanation, the Board's "grossly unreasonable" standard begs the legal question: "Grossly unreasonable, as compared to what?" That question, in turn, requires an inquiry, which the majority does not undertake, as to whether the Board's standard directs and

court's review any issue regarding the arguable inconsistencies in the foregoing passages in the Board's order.

confines the Board's settlement review in a manner that is consistent with the general legislative policy underlying ORS 656.587. The order does not explain why the Board's authority, under ORS 656.587, to approve "[a]ny compromise by the worker * * * of any right of action against an employer or third party" permits it to disapprove claimant's settlement, which he negotiated, according to the settlement judge, in the context of a probable defense verdict, because his wife received more in settlement of her consortium claim. The order is all the more puzzling, because the Board said that, in reviewing this settlement under ORS 656.587, "this Board is without authority to consider such a [consortium] dispute."

The Board's failure to interpret the statute, or to explain rationally why its findings lead to its legal conclusion, may deprive the order of "substantial reason," *Springfield Education Assn. v. School Dist.*, 290 Or 217, 228, 621 P2d 547 (1980), and interfere with effective judicial review, *Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982). *See also Williams v. SAIF*, 310 Or 320, 329, 797 P2d 1036 (1990) (Unis, J., specially concurring) (stating reasons for the requirement of a rational explanation of the basis for an agency's order). The Board cannot evade its responsibilities to interpret statutes and rules and to explain rationally why its interpretation and findings lead to its legal conclusion, even though the Board's authority to approve settlements is quite broad. Compliance by the Board with those responsibilities is not an act of grace. *See Dickinson v. Davis*, 277 Or 665, 674, 561 P2d 1019 (1977) (describing the importance to judicial review of a proper agency order when the agency makes a discretionary decision pursuant to broad statutory authority). However, we cannot reach and decide those discrete legal issues under claims that the Board is required to defer to the opinion of the settlement judge, and that substantial evidence does not support the order.

Because the majority correctly resolves the issues stated in the petition, I concur.

Unis, J., joins in this concurring opinion.